IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>KYLE DANIEL LEICK,<br><br>Defendant. | No. 17-CR-1051-LRR<br><br>REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION TO SUPPRESS |

_____

## I.  INTRODUCTION

This matter comes before the Court pursuant to defendant's motion to suppress evidence allegedly seized in violation of the Fourth Amendment to the United States Constitution. (Doc. 21). The grand jury charged defendant in a one-count indictment of being a drug user in possession of a firearm in violation of Title 18, United States Code, Sections 922(g)(3) and 924(a)(2). (Doc. 2). The charge arose, in part, from evidence found during the execution of a state search warrant of defendant's urine on August 30, 2017. Defendant argues the Court should suppress this evidence because the search warrant had become stale in the time between its issuance and execution. (Doc. 21-1, at 4).

The Honorable Linda R. Reade, United States District Court Judge, referred this motion to me for a Report and Recommendation. On February 7, 2018, I held an evidentiary hearing on defendant's motion at which Dubuque Investigator Nicholas Schlosser and forensic criminalist Staci Schmeiser testified. I admitted government's Exhibit 1 (application, search warrant, and return for defendant's urine sample), Exhibit 2 (toxicology report of defendant's urine sample), and Exhibit 3 (chart of detection

1

windows for drugs). For the reasons that follow, I respectfully recommend that the Court **deny** defendant's motion to suppress.

## II.     FINDINGS OF FACT

On August 22, 2017, A.N. went to the Dubuque Police Department and reported that her boyfriend, defendant, had strangled her during a dispute in their apartment. In conversation with police, A.N. reported that defendant used cocaine weekly and marijuana daily. She explained that defendant sold cocaine and manufactured and sold "dabs" of marijuana wax. A.N. further reported that defendant kept an AR-15-style rifle in the apartment. Based on A.N.'s information, investigators executed a search warrant on the defendant's residence on August 22, 2017, where they found "a loaded Rock River Rifle," "several extended magazines and rounds of ammunition," and drug paraphernalia, a scale, white residue that tested positive to be cocaine, along with packaging material that is consistent with the selling of marijuana wax and cocaine." (Exhibit 1, Doc. 28-1, at 2).

Subsequent to the search, but on the same day, Dubuque Investigator Nicholas Schlosser sought a search warrant for a urine sample from defendant. In his affidavit, Investigator Schlosser summarized the information provided by defendant's girlfriend and the evidence seized from the apartment, as described above. (*Id.*). Investigator Schlosser also listed defendant's prior controlled substance conviction. (*Id.*). In the affidavit, Investigator Schlosser requested to search defendant's urine "to determine the presence of controlled substances in [defendant's] system, while he is currently being a drug user in possession of firearms and ammunition." (*Id.*). An Iowa district judge issued the search warrant on August 22, 2017. (*Id.*, at 4). On August 30, 2017, investigators found and arrested defendant and executed the search warrant for defendant's urine sample. Defendant's urine tested positive for the presence of drugs. (Exhibit 2. Doc. 28-2).

## III.    ANALYSIS

The Fourth Amendment to the United States Constitution provides that "no [search] Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. AMEND. IV. The Eighth Circuit Court of Appeals has stated that the timeliness of a search warrant should be "measured in terms of *whether probable cause still existed at the time the warrant was executed*." *United States v. Shegog*, 787 F.2d 420, 422 (8th Cir. 1986) (internal quotation marks and citation omitted) (emphasis in original)). Probable cause is determined "under a totality-of-the-circumstances approach." *United States v. LaMorie*, 100 F.3d 547, 553 (8th Cir. 1996). "A delay in executing a search warrant may render stale the probable cause finding." *United States v. Gibson*, 123 F.3d 1121, 1124 (8th Cir. 1997) (citation omitted). "Important factors to consider in determining whether probable cause has dissipated, rendering the warrant fatally stale, include the lapse of time since the warrant was issued, the nature of the criminal activity, and the kind of property subject to the search." *Id.* (citation omitted).

Defendant concedes the search warrant was validly issued on August 22, 2017, but argues the eight day delay between issuance and execution rendered stale the probable cause finding underlying the search warrant. Considering the totality of the circumstances in this case, I find the eight day delay in this case does not render stale the probable cause finding for two reasons.

First, the government sought evidence to prove defendant committed the federal offense of being an unlawful drug user in possession of a firearm. The phrase "unlawful user of … any controlled substance" in 18 U.S.C. § 922(g)(3) is not defined by statute and "runs the risk of being unconstitutionally vague without a judicially-created temporal nexus between the gun possession and regular drug use." *United States v. Turnbull*, 349 F.3d 558, 561 (8th Cir. 2003) (emphasis added), *vacated*, 543 U.S. 1099, 125 S.Ct.

1047, 160 L.Ed.2d 993 (2005), *reinstated*, 414 F.3d 942 (8th Cir.2005) (per curiam). Courts have thus created a requirement that there be a temporal nexus between a defendant's possession of a firearm and the defendant's drug use. In short, the government must prove defendant was a *regular* user of drugs at the time he possessed the firearm. *Turnbull*, 349 F.3d at 561. The Eighth Circuit Court of Appeals affirmed a district court's jury instruction explaining what this means:

> Such use is not limited to the use of drugs on a particular day, or within a matter of days or weeks before, but rather that the unlawful use has occurred recently enough to indicate that the individual is actively engaged in such conduct. A person may be an unlawful current user of a controlled substance even though the substance is not being used at the precise time the person seeks to acquire a firearm. An inference of current use may be drawn from evidence of a recent use or possession of a controlled substance or a pattern of use or possession that reasonably covers the present time.

*United States v. Boslau*, 632 F.3d 422, 429-30 (8th Cir. 2011). Therefore, evidence that defendant used drugs after his possession of the firearm would be relevant to the question of whether he was a drug user at the time he possessed the firearm when, as here, it is part of a pattern of drug usage both before and after his possession of the firearm. *See, e.g.*, *United States v. Clanton*, 515 Fed. App'x 826, 830 (11th Cir. 2013) (finding that evidence that a positive urine test, from urine seized from defendant six days after he was found in possession of a firearm, helped to establish he was a regular user of unlawful drugs); *United States v. Sanders*, 43 Fed. App'x 249, 258 (10th Cir. 2002) (finding evidence of defendant's drug use both before and after the date when he was found in possession of a firearm supported a finding that he was a regular drug user).

Suppose, for the sake of argument, the government found the firearm in defendant's residence on August 22, but waited until defendant was arrested on August 30 to apply for the search warrant for defendant's urine sample. On August 30, probable cause still would have existed for the crime charged because the government, under the

4

crime charged, must prove defendant was a regular user of controlled substances. Thus, any evidence of drug use, before *or after* August 22, 2017, would have helped the government establish defendant was a regular user of drugs when he possessed the firearm. Therefore, even if the government waited eight days to apply for the search warrant, the government still would have been able to establish the probable cause needed to obtain the search warrant. Similarly, with the facts of the present case, the eight day delay between issuance and execution of the search warrant does not render the search warrant stale.

Second, I further find probable cause that defendant used drugs on or before August 22, 2017, still existed on August 30, 2017, because defendant was a daily user of marijuana. A.N. told the police that defendant used marijuana daily. DCI Forensic Criminalist Staci Schmeiser testified that a urine sample analysis of a chronic user of marijuana could show marijuana use up to two months prior to the date the urine was tested. *See also* Exhibit 3 (Doc. 28-3).

Therefore, despite the eight day delay, the warrant was not stale because evidence of defendant's drug use on or before August 22, 2017, could still be detectable when the search warrant was executed on August 30, 2017. Although it is possible that defendant's positive drug test for marijuana could have been the result of his use of marijuana between August 22, 2017, and August 30, 2017, it is equally possible, given the evidence of him being a chronic user of marijuana, that the positive test reflected his use of marijuana on or before August 22, 2017. In any event, the probable cause to believe defendant's urine would contain evidence of his marijuana use did not dissipate or become stale over the eight day period. *See United States v. Sloan*, 30 M.J. 741, 746 (A.F.M.R. 1990) (holding that information in search warrant was not stale because controlled substance could have still been detectable in defendant's urine at the time the warrant was executed).

5

## IV. CONCLUSION

For the reasons set forth above, I respectfully recommend the Court **deny** defendant's Motion to Suppress. (Doc. 21).

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Crim. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Crim. P. 59. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 14th day of February, 2018.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa